UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BRYAN PATRICK WEST,

Plaintiff,

v.

CLACKAMAS COUNTY SHERIFF'S OFFICE; OFFICER DEREK HUSKISSON; OFFICER SEAN COLLINSON,

Defendants.

Case No. 3:24-cv-01020-AA

**OPINION AND ORDER**

AIKEN, District Judge.

Plaintiff, a self-represented litigant, filed this action pursuant to 42 U.S.C. § 1983 and alleged claims of unlawful arrest, the use of excessive force, and an unreasonable search of his property. Defendants now move for summary judgment and argue that Plaintiff fails to establish a violation of his rights, or alternatively, that Defendants are entitled to qualified immunity. For the reasons explained below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

On July 15, 2022, at approximately 9:15 a.m., Deputy Huskisson of the Clackamas County Sheriff's Office responded to a report of theft at a nearby Walmart store. Huskisson Decl. ¶ 2 (ECF No. 49). Deputy Huskisson found Plaintiff nearby, and he matched the description of the theft suspect and possessed items from Walmart with no valid receipt. *Id.* ¶ 3. Plaintiff identified himself as "Jack Christopher West" and Deputy Huskisson "found there was a felony warrant for his arrest." *Id.* ¶ 4. As Deputy Huskisson placed Plaintiff in handcuffs, Plaintiff said that he had ingested six grams of heroin to prevent officers from finding it. *Id.* ¶ 5. Deputy Huskisson requested medical assistance and issued Plaintiff new citations for theft and tampering with physical evidence. *Id.* ¶¶ 6-7. Plaintiff was released and transported to Kaiser Sunnyside Hospital. *Id.* ¶ 6.

Later that day at approximately 11:00 a.m., Deputy Huskisson was in his patrol vehicle with his police canine, Ajax, near the Kaiser Sunnyside Hospital parking lot. Huskisson Decl. ¶¶ 9-10. Deputy Huskisson saw Plaintiff walking next to the parking lot and decided to take him into custody on the felony warrant. *Id.* ¶ 15.[1]

As Deputy Huskisson parked and exited his vehicle, Plaintiff stood in the street next to the parking lot. *Id.* Ex. 101 at 10:59:56-57. Plaintiff began to run away, and Deputy Huskisson released Ajax from his vehicle and he and Ajax chased Plaintiff into the parking lot. *Id.* ¶¶ 18-19 & Ex. 101 at 10:59:58-11:09. Plaintiff climbed onto the roof of a parked vehicle and began running and jumping from rooftop to rooftop along a row of vehicles. *Id.* ¶¶ 20-21 & Ex. 101 at 11:00:14. Ajax continually barked as he chased Plaintiff, and Deputy Huskisson twice shouted at

[1] In response to Plaintiff's First Set of Interrogatories, Deputy Huskisson stated that he did not believe Plaintiff had ingested narcotics and he returned to the hospital because he believed he "might see plaintiff outside and could then take him into custody on warrants." Pl.'s Response to Defs' Mot. Summ. J., Ex. A2 at 4 (ECF No. 67 at 12).

Plaintiff, "Stop or you're gonna get bit." *Id.* ¶ 21 & Ex. 101 at 11:00:14-:28. Plaintiff stopped on the roof of a Jeep, and Deputy Huskisson approached the vehicle, twice ordered Plaintiff to "lay down," and grabbed Ajax's harness. *Id.* ¶ 22 & Ex. 101 at 11:00:28-:33. Plaintiff declared that there was no reason to arrest him, and Deputy Huskisson responded that he had a felony warrant for his arrest. *Id.* & Ex. 101 at 11:00:33-37.

Plaintiff climbed down from the Jeep and Deputy Huskisson released Ajax and ordered the canine to bite and hold Plaintiff. Huskisson Decl. Ex. 101 at 11:00:39-43.[2] A short distance from the Jeep, Ajax bit Plaintiff's left arm, took him to the ground, and continued to bite and shake Plaintiff's arm as Deputy Huskisson attempted to place Plaintiff in handcuffs. *Id.* ¶ 24 & Ex. 101 at 11:00:43-11:01:06. Ajax bit Plaintiff for approximately twenty-two seconds before Deputy Huskisson ordered Ajax to release the bite. *Id.* Ex. 101 at 11:00:43-11:01:06. Ajax did not release Plaintiff's arm and continued biting and shaking him for approximately forty more seconds, releasing Plaintiff only after Deputy Huskisson physically removed Ajax from Plaintiff's arm with a tool. *Id.* Ex. 101 at 11:01:45. An ambulance was called, and Plaintiff was placed on a stretcher and transported to an emergency room for medical care. *Id.* Ex. 101 at 11:08:30-11:12:00.

After Plaintiff's arrest, Deputy Huskisson searched Plaintiff's backpack pursuant to the Clackamas County Sheriff's Office inventory policy. Huskisson Decl. ¶ 27 & Ex. 102.

On June 25, 2024, Plaintiff filed suit under § 1983 and brought claims against Deputy Huskisson, Deputy Collinson, and the Clackamas County Sheriff's Office. Plaintiff alleges that Deputy Huskisson unlawfully arrested him, used excessive force in doing so, and conducted an unlawful search of his backpack. Sec. Am. Compl. at 3, 5-6, 14-15 (ECF No. 37). Plaintiff

[2] According to Deputy Huskisson, Ajax is trained to "bite and hold" a person until a deputy arrives and can take the person into custody. Huskisson Decl. ¶ 12.

further alleges that Deputy Collison, as Deputy Huskisson's supervisor, "failed to supervise by not intervening when he had the opportunity to redirect officer Huskisson, and not directing Officer Huskisson to quit his reckless pursuit." *Id.* at 4, 14. Finally, Plaintiff alleges that the Clackamas County Sheriff's Office failed to "properly train officers in conducting legal search and seizures" and failed to provide "K-9 units with correct training." *Id.* Plaintiff alleges that he suffered significant pain and permanent, disabling injuries to his left arm and seeks compensatory damages. *Id.* at 7.

## DISCUSSION

Defendants move for summary judgment on grounds that Plaintiff cannot succeed on the merits of his claims and, alternatively, that they are entitled to qualified immunity. *See Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022) ("A government officer is nevertheless entitled to qualified immunity if the plaintiff's rights were not clearly established at the time of the alleged misconduct."). To prevail on their motion, Defendants must show that "there is no genuine dispute as to any material fact" and they are entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the moving party, Defendants bear the burden of establishing the absence of any genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the burden shifts to Plaintiff to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The Court must "draw all reasonable inferences" in favor of Plaintiff, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations and quotation marks omitted). Because Plaintiff is self-presented, the Court construes his pleadings liberally and affords him the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 882-83 (9th Cir. 1991). However, this does not relieve Plaintiff from his "obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Epling v. Komathy*, No. 10-CV-5862-GAF (RNB), 2011 WL 13142131, at *1 (C.D. Cal. Dec. 5, 2011).

A. Unlawful Arrest and Search

Plaintiff alleges that Deputy Huskisson had no grounds to arrest him after citing and releasing him on July 15, 2022. While Plaintiff does not necessarily dispute that an outstanding arrest warrant existed, Plaintiff contends that Deputy Huskisson told him that the warrant was "clear" and provided dates on which Plaintiff was required to appear on the warrant and the new citations. Pl.'s Response to Defs.' Mot. Summ. J., Ex. A5 at 2 (ECF No. 67 at 6).

Defendants move for summary judgment on grounds that "there is no dispute that plaintiff's arrest occurred pursuant to one or more judicial arrest warrants." Defs.' Mot. Summ. J. at 11 (ECF No. 47); *see* Huskisson Decl. ¶ 4; *see also Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 928 (9th Cir. 2001) (finding that a database report of an arrest warrant established probable cause to arrest). However, Defendants submit no evidence showing that a warrant for Plaintiff's arrest remained outstanding when Deputy Huskisson encountered Plaintiff a second time on July 15, 2022. While it is unlikely that the warrant had been "cleared," the Court must construe all inferences in favor of Plaintiff at the summary judgment stage. Given the lack of

evidence regarding the existence or validity of an outstanding arrest warrant, Defendants' motion is denied on this claim.[3]

Plaintiff also alleges that Deputy Huskisson unlawfully searched his backpack without a warrant after he was arrested. Deputy Huskisson maintains that he searched Plaintiff's backpack pursuant to the Clackamas County Sheriff's Office inventory policy to list the backpack and its contents for safekeeping. Huskisson Decl. ¶¶ 27-28 & Ex. 102; *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983) (stating that an inventory search conducted pursuant to "routine administrative procedure" is "a well-defined exception to the warrant requirement"). Plaintiff nevertheless argues that he "had legally discarded and abandoned the bag for safety before the encounter" and that "Deputy Huskisson forced Plaintiff to resume physical possession of the bag solely to create the legal fiction of an 'inventory search' upon arrest." Pl.'s Sur-Reply at 2 (ECF No. 72).

By Plaintiff's own admission, he "discarded and abandoned" his backpack and as a result, he cannot now claim a protected privacy interest in it. *See United States v. Decoud,* 456 F.3d 996, 1007 (9th Cir. 2006) (driver who "unequivocally disclaim[ed] ownership" of briefcase abandoned any privacy interest in it). Accordingly, summary judgment is granted o this claim.

B. Excessive Force

Plaintiff next claims that Deputy Huskisson used unreasonable and excessive force to effectuate his arrest by deploying Ajax to apprehend him and by failing to release Ajax after Plaintiff was subdued. *See Hernandez v. Town of Gilbert*, 989 F.3d 739, 744 (9th Cir. 2021) (stating that "it's well-settled that the use of a police dog is subject to excessive force analysis").

Claims of excessive force in the context of an arrest are analyzed under the Fourth Amendment's prohibition against unreasonable seizures. *Graham v. Connor,* 490 U.S. 386, 394

[3] The Court might reconsider this claim if Defendants timely move for reconsideration and provide evidence of a valid and outstanding arrest warrant at the time of Plaintiff's arrest in the hospital parking lot on July 15, 2022.

(1989); *Deorle v. Rutherford,* 272 F.3d 1272, 1279 (9th Cir. 2001). "The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). "Determining whether the force used to affect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

The Court first assesses "the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003). The Ninth Circuit has held that a bite and hold by a police canine can constitute a "serious" intrusion, particularly when the bite and hold lasts "for an unusually long time period" and "cause[s] a suspect pain and bodily injury." *Id.* (finding that the deployment of a police canine constituted "considerable" force when the deputy allowed the canine to bite and hold the plaintiff for an "unusually long time period"); *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (holding that the "excessive duration" of a bite "could constitute excessive force that would be a constitutional violation" where the police canine bit the plaintiff for approximately ten to fifteen seconds). Here, Deputy Huskisson does not dispute that he deployed Ajax to apprehend Plaintiff and that Ajax continued to bite and hold Plaintiff for approximately one minute. Huskisson Decl. ¶¶ 23-24; *see also id.* Ex. 101 at 11:00:44-11:01:45. This use of force, although not deadly, was a significant intrusion on Plaintiff's interests under the Fourth Amendment.

When balancing the level of force used against the government's interests in utilizing it, the Court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Court may also consider whether the officer issued a warning before the use of force. *Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010) (noting that "police officers normally provide such warnings where feasible, even when the force is less than deadly, and that the failure to give such a warning is a factor to consider"). Ultimately, the issue is whether the totality of the circumstances justified the degree of force used. *County of Los Angeles v. Mendez*, 581 U.S. 427-28 (2017); *Graham*, 490 U.S. at 396-97.

As discussed above, it remains an issue of fact whether Plaintiff had outstanding felony warrants for his arrest. Even if he did, on this record it is unclear whether the crime at issue was severe or whether Plaintiff posed an immediate safety risk. Defendants present no evidence that Plaintiff was charged with a violent or otherwise serious offense and no evidence of record suggests that Plaintiff was considered dangerous. To the contrary, Deputy Huskisson's previous encounter with Plaintiff involved no violence or threatening behavior and Deputy Huskisson released Plaintiff to the hospital without taking him into custody or calling backup deputies to do so. If Plaintiff posed a serious risk to community or officer safety, presumably he would have been taken into custody rather than released.

Deputy Huskisson also asserts that Plaintiff posed a safety risk because he "was known to previously have been in possession of a knife" and was running through a "busy" parking lot. Huskisson Decl. ¶ 25. However, Defendants present no evidence that Plaintiff previously possessed a knife, and when Deputy encountered Plaintiff, he was simply walking in the street

by the parking lot.[4] Although Plaintiff ran away, no pedestrians or moving vehicles were in the vicinity and Plaintiff did not hide in a confined area. Huskisson Decl. Ex. 101 at 10:59:54-11:00; *see Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994) (applying qualified immunity to a canine bite and hold where deputies believed the suspect was armed based on information from dispatch and the suspect potentially posed a danger of ambush by hiding on private property). Construing all inferences in favor of Plaintiff, the first and second *Graham* factors do not necessarily weigh in favor of deploying Ajax. *See Lowry v. City of San Diego*, 858 F.3d 1248, 1258 (9th Cir. 2017) (stating that the "second Graham factor, 'whether the suspect pose[d] an immediate threat to the safety of the officers or others,' is 'the most important single element of the three specified factors.'") (quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (1994)).

As to the third *Graham* factor, Plaintiff ran away when Deputy Huskisson approached him near the parking lot, and Deputy Huskisson was without backup or another effective means to take Plaintiff into custody. Huskisson Decl. ¶ 25. Plaintiff's flight thus weighs in favor of Deputy Huskisson's initial deployment of Ajax. *Miller*, 340 F.3d at 964 (stating that the "government has an undeniable legitimate interest in apprehending criminal suspects").[5] However, after running along the top of several cars, Plaintiff stopped on the Jeep and claims that he "dismount[ed] from [the] jeep to comply with officer's command to 'lay down'" and "not

---

[4] In his response, Plaintiff states that Deputy Huskisson placed a pocket-knife in the front pocket of Plaintiff's backpack when he was cited and released on July 15, 2022. Pl.'s Response to Defs.' Mot. Summ. J., Ex. A5 at 2. Even if this statement is accepted as true, Deputy Huskisson still did not consider Plaintiff dangerous enough to take into custody and Plaintiff also discarded the backpack as he was chased.

[5] Deputy Huskisson further asserts that he exited his patrol vehicle after seeing Plaintiff near the parking lot and told Plaintiff he was under arrest for his felony warrants and warned that a police canine could be used if he did not comply. Huskisson Decl. ¶¶ 18-19. However, the audio of the bodycam recording did not begin until Deputy Huskisson and Ajax began chasing Plaintiff, and it remains a disputed fact whether Deputy Huskisson issued a warning. *Id.* Ex. 101 at 11:00:13 (activating audio of bodycam).

to run." Pl.'s Response to Defs.' Mot. Summ. J. at 2 & Ex. A5 at 2. Plaintiff asserts that when he "got off the Jeep to comply, Deputy Huskisson released K-9 Ajax." *Id.* Ex. A5 at 2.

Defendants counter that the bodycam recording "indisputably" shows that Plaintiff was "in the process of running away with his back to the deputy" after he climbed down from the Jeep and was "at a distance of at least fifteen to twenty feet away from the base of the Jeep when the canine reaches him." Defs.' Reply at 2 (ECF No. 68). Defendants argue that Plaintiff's "version of events is so utterly discredited by the record that no reasonable jury" could believe him and the Court should reject his "visible fiction" and view the facts "in the light depicted by the videotape." *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

Contrary to Defendants' assertion, the bodycam recording does not "indisputably" show that Plaintiff attempted to flee after climbing down from the Jeep. The recording shows that once Plaintiff stopped on the roof of the Jeep, Deputy Huskisson approached the front passenger side of the vehicle and grabbed Ajax's harness as Ajax strained against his harness and continued barking. Huskisson Decl. Ex. 101 at 11:00:30-33. After Deputy Huskisson twice yelled at Plaintiff to "lay down" and told him, "you have a felony warrant," Plaintiff said something about having a citation. *Id.* at Ex. 101 at 11:00:33-38. The bodycam recording becomes partially obscured by Deputy Huskisson's hand as he apparently spoke with dispatch. *Id.* Ex. 101 at 11:00:38-40.

Plaintiff then climbed down from the roof at the back of the Jeep, as evidenced by Ajax's attention fixed toward that area and by the shadow of Plaintiff's hand and a portion of his arm visible in the bodycam recording. *Id.* Ex. 101 at 11:00:39-40. At that moment, Deputy Huskisson released Ajax and gave orders to bite and hold Plaintiff, and Plaintiff's reflection is visible on the side of the Jeep as he appeared to stand a few feet away and look in the direction of Ajax. *Id.* The

recording does not clearly show Plaintiff running away before Ajax was released, and it arguably suggests that Deputy Huskisson released Ajax without warning when Plaintiff climbed down from the Jeep. *Id.* On this record, genuine issues of material fact exist as to whether Plaintiff attempted to flee or intended to surrender and only moved away from the Jeep to avoid being bitten by Ajax. *Watkins*, 145 F.3d at 1090, 1093 (denying qualified immunity where the officer allowed a police canine to keep biting the suspect when the suspect could not comply with an order to show his hands "because he was resisting the dog and recoiling from the pain").

When the facts and all reasonable inferences are construed in Plaintiff's favor, as they must be at the summary judgment stage, the three *Graham* factors—the severity of the crime involved, whether Plaintiff posed a threat to Deputy Huskisson or others, and whether Plaintiff was evading arrest when he climbed down from the Jeep—weigh in favor of Plaintiff.

Similarly, questions of fact remain regarding the duration of the bite and hold. "A police officer violates the Fourth Amendment when he or she allows a police dog to continue biting a suspect who has fully surrendered and is under officer control." *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) (citing *Mendoza*, *Watkins*, and *Miller*). Plaintiff argues that Deputy Huskisson "could have physical disengaged the dog at any point but allowed the mauling to continue for over one minute while Plaintiff was prone." Pl.'s Sur-Reply at 1-2. Defendants maintain that Deputy Huskisson ordered Ajax to release Plaintiff once he was in handcuffs, and Ajax's continued hold on Plaintiff was not deliberate and, at most, constituted negligence rather than the use of excessive force.

The bodycam recording shows that after Deputy Huskisson pinned Plaintiff to the ground, Ajax bit and violently shook Plaintiff's left arm for approximately eighteen seconds before Deputy Huskisson ordered Ajax to release the bite. Huskisson Decl. Ex. 101 at 11:00:48-

11:01:06. Plaintiff was lying face-down, with Deputy Huskisson kneeling on Plaintiff's back and holding his right hand while attempting to place his left hand in handcuffs. *Id.* During that time, Plaintiff did not physically resist and he screamed in pain and repeatedly pleaded, "Please!" *Id.* Resolving all factual disputes and construing all inferences in Plaintiff's favor, a reasonable jury could find that Deputy Huskisson exceeded the force reasonably necessary to effectuate Plaintiff's arrest by allowing Ajax to bite Plaintiff for approximately eighteen seconds after he was restrained on the ground. *See Watkins*, 145 F.3d at 1090, 1093 (denying qualified immunity where the officer allowed the canine to bite the suspect for fifteen to twenty seconds when the suspect could not comply with an order).

For the same reasons, Deputy Huskisson is not entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 580 U.S. 73, 78-79 (2017) (per curiam) (citation and quotation marks omitted). As stated above, it was clearly established at the time of Plaintiff's arrest that allowing a police canine to bite and hold a suspect that is under "officer control" constitutes excessive force in violation of the Fourth Amendment. *Rosenbaum*, 107 F.4th at 924-25 ("We reaffirmed in *Watkins* that an officer violates clearly established law by allowing a police dog to continue biting a suspect after the suspect's surrender, even when the suspect is not handcuffed."); *Watkins*, 145 F.3d at 1093 (stating "that it was clearly established that excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force"); *Mendoza*, 27 F.3d at 1362. Even if Ajax refused to release Plaintiff when Deputy Huskisson ordered him to do so, Deputy Huskisson did not give the release order for at least eighteen seconds after Plaintiff was pinned on the ground and arguably under the deputy's control.

*Watkins*, 145 F.3d at 1090, 1093. Under these circumstances, Plaintiff's rights were clearly established and qualified immunity is not appropriate.

C. Supervisory and Municipal Liability

Finally, Plaintiff brings claims against Deputy Collinson and the Clackamas County Sheriff's Office based on supervisory and municipal liability. However, liability under § 1983 arises upon a showing of personal participation by each defendant, and a supervisor is not liable for the constitutional violations of employees unless the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Here, Plaintiff presents no evidence that Deputy Collison played any role in the alleged violation of his rights. *See* Huskisson Decl. ¶ 29 (stating that Deputy Collison did not direct him "to act in any way regarding Plaintiff" and "had no role in the incidents" between Plaintiff and the deputy).

Likewise, a municipal entity such as Clackamas County is not liable under § 1983 solely because it employs an alleged wrongdoer. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978). Rather, to sustain a claim against Clackamas County, Plaintiff must present evidence giving rise to a reasonable inference that (1) Clackamas County had a policy, custom, or widespread practice that was the moving force behind the alleged constitutional violations; (2) Clackamas County failed to properly train its officers and the failure to train amounts to deliberate indifference to Plaintiff's rights; or (3) the individual who violated Plaintiff's constitutional rights had final policy-making authority or ratified a subordinate's unconstitutional decision or action. *Rodriguez v. Cnty. of Los Angeles,* 891 F.3d 776, 802-03 (9th Cir. 2018).

Plaintiff presents no evidence giving rise to a reasonable inference that the alleged use of excessive force resulted from an unconstitutional County policy or custom, as the result of the

County's failure to train its officers, or by County official with final policy-making authority. Plaintiff relies solely on Deputy Huskisson's remarks that the electronic shock collar worn by Ajax "broke" and that "nothing of ours works" at the sheriff's office. Huskisson Decl. Ex. 101 at 11:07:25, 11:12:18-19; *see* Pl.'s Sur-Reply Suppl. Decl. at 2 (ECF No. 73). These isolated statements, unaccompanied by any other persuasive evidence, do not establish municipal liability.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 47) is GRANTED in part and DENIED in part. The motion is granted with respect to Plaintiff's claims against Deputy Collinson and the Clackamas County Sheriff's Office and Plaintiff's claim of unlawful search. The motion is denied with respect to Plaintiff's claims of unlawful arrest and excessive force against Deputy Huskisson.

Within thirty (30) days from the date of this Order, the parties shall confer and inform the Court whether they wish to pursue settlement negotiations or proceed to trial. The Court will appoint counsel for Plaintiff at that time.

IT IS SO ORDERED.

DATED this 30th day of September, 2026.

/s/Ann Aiken
ANN AIKEN
United States District Judge